RICHARD I. AND EILEEN H. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 10063-78
United States Tax Court
T.C. Memo 1983-110; 1983 Tax Ct. Memo LEXIS 677; 45 T.C.M. (CCH) 809; T.C.M. (RIA) 83110; February 23, 1983. Carl E. Chamblee, for the petitioners. Thomas R. Thomas, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined the following deficiencies in income tax of petitioners Richard I. Jones and Eileen H. Jones for the years indicated: Deficiencies
Calendar
in
Additions to Tax
Year
Income Tax
Sec. 6653(a)
Sec. 6651(a) [1]
1973
$4,138.72
$206.94
$620.81
1974
1,755.72
87.79
1975
7,831.67
391.58
The issues for decision are: (1) Whether petitioners understated their taxable income in the amount of $15,218.47 and $36,674.03 for the years 1974 and 1975, respectively; (2) whether $3,406.73 of expenditures by petitioners in 1973 for improvements on a warehouse rented by Mr. Jones from his wholly owned corporation is deductible as a business expense; (3) whether petitioners for each of the years 1973, 1974 and 1975, are liable for an addition to tax under *679 section 6653(a); and (4) whether petitioners are liable for the year 1973 for an addition to tax under section 6651(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners Richard I. Jones and Eileen H. Jones, husband and wife, resided in Trussville, Alabama, at the time of the filing of their petition herein. Petitioners timely filed joint U.S. individual income tax returns for the calendar years 1974 and 1975 with the Internal Revenue Service Center, Chamblee, Georgia. Petitioners filed a joint U.S. individual income tax return for the calendar year 1973 with the Internal Revenue Service Center, Chamblee, Georgia, on July 5, 1974. Mr. Jones operates as a sole proprietorship a business known as the Alco Saw Works. In this business Mr. Jones sells and services saws. Mr. Jones is also the sole shareholder of a corporation called Industrial Coordinators, Inc. The corporation owned a warehouse which it leased to Mr. Jones beginning in 1970. Mr. Jones leased the warehouse from the corporation on a month-to-month basis; however, no written lease was executed. In 1973, petitioners made the following expenditures to construct *680 partitions in the warehouse Mr. Jones leased from the corporation: (1) $166.95 for equipment purchased for resale; (2) $1,747.15 for materials; (3) $1,341.50 for contract labor; (4) $116.98 for permits; and (5) $34.15 for other leasehold improvements. Subsequently, in the fall of 1975 the corporation transferred title to the warehouse to Mr. Jones in return for his assuming the mortgage outstanding on the property. The corporation itself was also liquidated in 1975. On Schedule C of their 1973 Federal income tax return, petitioners claimed a deduction for the cost of the above-listed items as a business expense. [2]
Mr. and Mrs. Jones on their 1974 income tax return disclosed the following items of income: (1) $6,964.92 of wages earned by Mrs. Jones; (2) $951.86 of interest income; and (3) a net loss of $10,707.60 with respect to income other than wages, dividends and interest. This $10,707.60 net loss reported on the return was composed of a $10,885.44 business loss from Mr. Jones' operation of *681 his saw business reported on Schedule C of the return and $177.84 of income from a State income tax refund.On the Schedule C the profit and loss from the saw business was reported on an accrual method of accounting; the Schedule C also showed "O" inventory at both the beginning and ending of the year. A loss in adjusted gross income of $2,790.82 was reported on the return and a refund in the amount of $976.80 was claimed based on the withholding for Federal income tax purposes from the wages of Mrs. Jones. The 1975 income tax return filed by Mr. and Mrs. Jones disclosed the following items of income: (1) $7,568.54 of wages earned by Mrs. Jones; (2) $145.89 of interest income; and (3) a net loss of $12,945.62 with respect to income other than wages, dividends and interest. This $12,945.62 net loss consisted of a $13,135.22 business loss from the saw business conducted by Mr. Jones reported on Schedule C on an accrual method of accounting and $189.60 of income from a State income tax refund. The return showed inventory of "O" at the beginning of the year and $17,516 at the end of the year. The return reported a loss in adjusted gross income of $5,231.19. Petitioners on the return *682 claimed a refund of $952.80 based on the amount which had been withheld for Federal income tax purposes from Mrs. Jones' salary. The notice of deficiency contained the following explanation: (a) It is determined that your net business income totaled $17,940.93 in lieu of $694.82 reported on your income tax return for tax year ended December 31, 1973, $4,582.72 in lieu of a net loss of $10,885.44 reported on your income tax return for tax year ended December 31, 1974, and $23,488.50 in lieu of a net loss of $13,135.22 reported on your income tax return for tax year ended December 31, 1975. Therefore, your taxable income is increased as shown below: Tax Year Ended
Amount
December 31, 1973
$17,246.11
December 31, 1974
$15,468.16
December 31, 1975
$36,623.72
The above adjustments to the net business income of petitioners for the years 1973, 1974 and 1975, were based on respondent's determination that petitioners had underreported their income in each of the years and improperly deducted as business expenses the expenditures made to construct the partitions in the warehouse leased by Mr. Jones from his corporation. [3] Respondent capitalized the cost of constructing *683 the partitions in the warehouse and allowed a deduction for depreciation thereon. Respondent's determination that petitioners underreported their income for 1974 in the amount of $15,218.47 was based upon the following reconstruction of their income: INDIRECT METHOD FOR YEAR ENDING - DEC. 31, 1974
Source
Reference
Amount
Cash on Hand 1-1-74
Taxpayer
$ 200.00
Checking Acct.
Page 7
1,965.65
1-1-74
Savings Acct.
Savings
53.95
1-1-74
Book
Gross Receipts
Tax
115,014.28
Return
Wages
Tax
6,964.92
Return
Tax Refund
1973
487.50
Return
Inheritance
Taxpayer
14,400.00
Proceeds from
Page 8
5,618.30
Loans
Interest Income
Tax
951.86
Return
State Tax Refund
State
177.84
Tax Refund
$145,834.30
*684 INDIRECT METHOD FOR YEAR ENDING - DEC. 31, 1974
Source
Expenditure
Reference
Amount
Cash on Hand 1-1-74
Cash on Hand
Taxpayer
$ 200.00 12-31-74
Checking Acct.
Checking Account
Page 7
(216.19)
1-1-74
12-31-74
Savings Acct.
Savings Account
Savings
1-1-74
12-31-74
Book
53.95 Gross Receipts
Purchases
Tax
59,558.52 Return
Wages
Business Expense
Tax
62,798.78 Less Depr. & Int.
Return
Tax Refund
FICA
Tax
403.68 Return
Inheritance
Withholding
Tax
976.80 Taxes
Return
Proceeds from
Loan Payments
Page 14
7,798.17 Loans
Interest Income
Purchase capital
Tax
3,559.10 Items
Return
State Tax Refund
Personal Living
Page 10
12,687.74 Expenses
Other Expenditures
Page 11
2,980.00 Taxes Paid - State
Tax
189.60 Return
Certificate of
Taxpayer
14,000.00 Deposit
City Tax Paid
Tax
69.00 Return
$165,059.15 (145,834.30)
19,224.85 Decrease in Accounts Receivable
(Provided by Taxpayer)
(2,559.78)
16,665.07 Increase in Accounts Payable
(provided by Taxpayer)
(1,446.60)
$ 15,218.47 *685 Respondent determined that petitioners had underreported their income for the year 1975 in the amount of $36,674.03 based upon the following reconstruction: INDIRECT METHOD FOR YEAR ENDING DEC. 31, 1975
Source
Reference
Amount
Cash on Hand
Taxpayer
$ 200.00 1-1-75
Checking Acct.
Page 7
(216.19)
1-1-75
Savings Acct.
Savings
53.95 1-1-75
Book
Gross Receipts
Tax
86,891.03 Return
Wages
Tax
7,568.54 Return
Tax Refund
Tax
976.80 Return
Proceeds from
Page 12
10,881.43 Loans
Interest
Tax
145.89 Return
Certificate of
Taxpayer
14,000.00 Deposit
Borrowed on
Taxpayer
2,500.00 Insurance
$123,001.45 INDIRECT METHOD FOR YEAR ENDING DEC. 31, 1975
Source
Expenditure
Reference
Amount
Cash on Hand
Cash on Hand
Taxpayer
$ 200.00 1-1-75
12-31-75
Checking Acct.
Checking Acct.
Page 7
(1,299.79)
1-1-75
12-31-75
Savings Acct.
Savings Acct.
Savings
53.95 1-1-75
12-31-75
Book
Gross Receipts
Purchases
Tax
61,556.38 Return
Wages
Business Expense
Tax
62,524.00 Less Depr. & Int.
Return
Tax Refund
FICA
W-2
438.72 Proceeds from
Withholding
W-2
952.80 Loans
Taxes
Interest
Loan Payments
Page 12
9,948.95 Per Bank
Certificate of
Personal Living
Page 10
12,593.02 Deposit
Expenses
Borrowed on
Certificate of
Taxpayer
14,000.00 Insurance
Deposit
City Tax
W-2
75.00 State Tax
W-2
136.68 Withhold
Loan Payback
Page 13
7,266.81 Per Books
Other Expenditures
Page 11
1,060.00 $169,506.52 (123,001.45)
46,505.07 Increase in Accounts
(Provided by Taxpayer)
1,780.40 48,285.47 Increase in Accounts Payable
(Provided by Taxpayer)
(11,611.44)
$ 36,674.03 *686 The parties subsequently stipulated that Mr. Jones in the operation of the saw business for 1974 had gross receipts of $144,936.55, purchases of $61,198.98 and business expenses of $72,845.65. The parties agree that Mr. and Mrs. Jones incurred personal living expenses in 1974 in the amount of $13,774.28. The parties also subsequently stipulated that in 1975 Mr. Jones in his saw business had gross receipts of $136,227.16, purchases of $54,026.66 and business expenses of $65,414.01. The parties agree that Mr. and Mrs. Jones in 1975 had personal living expenses in the amount of $16,499.46. OPINION The first issue for decision is whether petitioners underreported their income for each of the years 1974 and 1975. Using the source-and-application-of-funds method of reconstructing income, respondent determined that petitioners understated their taxable income for 1974 and 1975. This method is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his reported source of funds for that same period has taxable origins, absent adequate explanation to the contrary by the taxpayer. In explaining the difference between the *687 expenditures made and the accounted for sources of funds, the taxpayer may show the difference is attributable to such nontaxable items as loans, gifts, and inheritance or assets on hand at the beginning of the taxable period. The method, like other methods of reconstruction of income such as the net worth method and the cash expenditures method, is not a method of accounting. However, such method is available to respondent as a test of a taxpayer's books and records and as evidence of unreported income. affg. in part a Memorandum Opinion of this Court; . [4]
*688 Petitioners do not dispute most of the source figures or expenditure figures utilized in respondent's reconstruction of their income. The parties have stipulated that gross receipts from Mr. Jones' business in both 1974 and 1975 were substantially higher than were reported on petitioners' tax returns. The parties have also stipulated to the correct amount of the purchases and business expenses of Mr. Jones in conducting the saw business in the years 1974 and 1975. The amounts differ from the figures used by respondent in making his reconstruction of petitioners' income. Petitioners contend that based on the evidence presented respondent incorrectly determined that they underreported their income, since in each year their total source of funds exceeded the total amount of funds applied. [5]
*689 In our view petitioners have totally failed to show that respondent incorrectly determined that they underreported their income in each of the years 1974 and 1975. Even utilizing the figures contained in the computations made by counsel for petitioners, it is apparent that petitioners substantially underreported the taxable income derived by Mr. Jones from his saw business.Such underreported income, which petitioners have stipulated to, in fact exceeds the amount of income which respondent determined that they had underreported. Also, if petitioners' income from the saw business for the years 1974 and 1975 is recomputed on the basis of the stipulated figures, the result is a showing that petitioners had income from the saw business of $10,891.92 and $34,301.49 for these respective years rather than the reported losses of $10,855.44 and $13,135.22. [6] It is not clear whether the stipulated business expenses included depreciation of $2,637 and interest on business indebtedness of $905.42 in 1974 and $2,637 and $234.55 in 1975. However, even if these additional deductions are made, the saw business income from the stipulated figures in each year when added to the reported losses *690 is more than the amounts determined by respondent as understatement of income in the notice of deficiency. We therefore sustain respondent's determination that petitioners underreported their income in 1974 and 1975 in the amounts of $15,218.47 and $36,674.03, respectively. The next issue for decision is whether the expenditures made by petitioners in constructing partitions in the warehouse rented by Mr. Jones from his corporation must be capitalized or may be deducted as a business expense under Section 162. Petitioners do not contend that the partitions were incidental repairs or maintenance rather than permanent improvements, but that the improvements should be deducted since Mr. Jones had a month-to-month *691 lease.Improvements made by a lessee are capital expenditures and they are not deductible as business expenses. Section 263.If the estimated useful life of the improvements in the hand of the lessee is longer than the remaining period of his lease, an annual deduction for depreciation may be taken based on an amount equal to the cost of the improvements divided by the number of years remaining in the term of his lease.Section 178 prescribes the rules governing the effect to be given renewal options and for determining the remaining period of the lease. See generally section 1.162-11(b) (1) and -11(b)(3), Income Tax Regs. Petitioners contend that because Mr. Jones only rented the warehouse on a month-to-month basis from his corporation, the remaining period of their lease at the time the improvements were constructed was much less than one year and that they properly deducted the entire cost of the improvements in 1973. Section 178(b) provides, however, that where the lessee and the lessor are related persons at any time during the taxable year, the lease shall be treated as including a period of not less duration than the remaining useful life of the improvement. Since Mr. Jones *692 was the sole shareholder of the corporation during the years here in issue, we find that respondent correctly required petitioners to amortize the cost of the improvements over the useful life of such improvements. Section 178(b) and section 267(b)(2). Respondent allowed deductions for depreciation of the improvements in the notice of deficiency and petitioners have shown no error in respondent's computation. The next issue for decision is whether petitioners in each of the years in issue are subject to an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). Petitioners have conceded that they underreported their income for 1973 in the amount determined by respondent based on an indirect reconstruction of their income for such year. We have also, as discussed above, sustained respondent's determination that petitioners underreported their income in 1974 and 1975 in the respective amounts of $15,218.47 and $36,674.03. The record also clearly shows that petitioners on their returns substantially underreported gross receipts and taxable income derived from Mr. Jones' saw business. Such substantial omissions of income are strong *693 evidence of negligence or intentional disregard of rules and regulations. We find that petitioners are liable for an addition to tax in each of the years 1973, 1974 and 1975, under section 6653(a). Petitioners have failed to offer any evidence showing that the late filing of their 1973 tax return was due to reasonable cause. Accordingly, we sustain respondent's determination that petitioners are liable for an addition to tax under section 6651(a) for 1973. . Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. Petitioners on their 1973 income tax return also understated their business income but they have conceeded respondent's determination of this understatement for the year 1973.↩
3. Petitioners, in addition to conceding that they had underreported their income for 1973 in the amount as determined by respondent, also conceded that a $100.08 expenditure for rental and $236 of personal expenses deducted by them on Schedule C of return is business expenses were in fact nondeductible personal expenditures, leaving in issue for 1973 only the deductibility of the expenditures made to construct partitions in the warehouse.↩
4. As we noted in , strictly speaking the source-and-application-of-funds method and the cash expenditures method are distinct methods. The classical cash expenditures method developed from the net worth method. The first step under the cash expenditures method is evaluation of the taxpayer's assets at the beginning of the taxable period in order to determine the funds available for expenditure during the ensuing taxable period. The second step under the cash expenditures method is a determination of the amount by which expenditures exceed reported income for the taxable period. In contrast, under the source-and-application-of-funds method respondent does not actually compute a taxpayer's net worth but instead assumes that the taxpayer's net worth remains the same at both the beginning and the end of the taxable period.↩
5. Counsel for petitioners submitted tables comparing the figures used by respondent in his reconstruction of petitioners' income with the figures stipulated or otherwise shown at the trial. The primary difference in the figures is the stipulated amounts of gross receipts and purchases as compared to these items as reported on petitioners' returns and used by respondent in the determination in the notice of deficiency. The accounted for excess results entirely from petitioners' underreporting of gross receipts for the saw business. This source of income is a taxable source. Therefore, petitioners' computation does not refute respondent's determination but rather reinforces its correctness by explaining the unaccounted for source as a taxable source of income.↩
6. The computation is as follows: ↩
1974
1975
Gross receipts as stipulated
$144,936.55 $136,227.16 Opening inventory
per return
Purchases as
$61,198.98
$54,026.66 stipulated
Closing inventory
(17,516.00)
per return
Cost of Goods sold
(61,198.98)
(36,510.66)
Gross Profit
83,737.57 99,716.50 Business expenses as
(72,845.65)
(65,414.01)
stipulated
Net Income
$ 10,891.92 $ 34,302.49